AOYAGI, J., dissenting.
I agree with the majority that, under State v. Henley , 363 Or. 284, 422 P.3d 217 (2018), the trial court erred in admitting Petke's testimony that "grooming is a gradual process of building trust with a child with the purpose of establishing such a level of trust to allow for an opportunity for sexual abuse," without requiring the state to establish the requisite level of scientific validity and reliability of that evidence. I disagree with the disposition, however, because I believe that the error was harmless on this record. In my view, the majority makes two errors in its harmlessness analysis. First, it imputes certain of defendant's testimony to Petke, which is inappropriate on this record. Second, it fails to recognize that, even if defendant's testimony were understood as scientific, that scientific overlay could not have affected the verdict under the particular circumstances of this case.
*562 Unlike the witness in Henley , Petke provided only a general definition of "grooming." She did not provide any examples, nor did she opine on whether any of defendant's specific conduct (as reported by T) could be considered grooming. Cf. Henley , 363 Or. at 304, 422 P.3d 217 (expert testified about grooming generally and as applied to the defendant's specific conduct, and the "testimony [of the state's expert] about grooming was 'scientific' evidence under OEC 702"). The majority treats that as a distinction without a difference. It reasons that Petke's testimony "gave the jury a scientific *591 lens" through which to view the evidence and that her doing so necessarily could have affected the verdict. State v. Plueard , 296 Or. App. 580, 590, 439 P.3d 556 2019. I disagree on this record.
In arguing that the admission of Petke's definition of "grooming" was not harmless, defendant relies on his own testimony. The prosecutor posed two hypotheticals and asked defendant whether either "could be construed as sexual grooming." The first was "offer[ing] Magic cards to a 13-year-old slow, odd, Magic card-playing boy in return for him to take a Viagra."[1] The second was "offering that same child Magic cards in order to induce that child to show you their penis."[2] Defendant answered "yes" to both questions.
The difficulty is that neither of those acts meet Petke's definition of "grooming." According to Petke, "grooming is a gradual process of building trust with a child with the purpose of establishing such a level of trust to allow for an opportunity for sexual abuse." There is nothing trust-building (or gradual) about bribing a child you do not know, or barely know, to do something sexual. To illustrate, providing alcohol to a 15-year-old girl on several occasions to build a relationship of trust in aid of later taking advantage of that trust to sexually abuse her would be grooming under Petke's definition. However, approaching a 15-year-old girl you do not know and offering her alcohol in exchange for showing her vagina, or in exchange for taking a Rohypnol so that she will be less resistant to sexual abuse in an hour, would not be grooming under Petke's definition.
Applying that distinction here, bribing a child to take a Viagra or to show his penis is not a trust-building act but, rather, is itself a criminal act or prefatory to a criminal act. Indeed, the reason that defendant's conduct "that the prosecution sought to characterize as grooming" was a "central issue at trial," 296 Or. App. at 589, 439 P.3d at 560, was because that conduct was the basis for a charge. Count 2 was based *592 on the pant-removal incident, which occurred shortly after defendant bribed T to take a Viagra. That is very different from Henley , in which the defendant had given the young victim massages in the past, and the "scientific" witness testified that massages can be grooming behavior, but defendant's massages themselves were not criminal acts or part of the charges and could have been viewed as innocuous. See Henley , 363 Or. at 286-89, 422 P.3d 217.
That difference matters for two reasons. First, it is inappropriate to impute to Petke defendant's testimony that his own alleged conduct could be construed as "grooming" when the prosecutor did not ask defendant to use Petke's definition, when defendant did not reference Petke's definition, and when defendant's answers were plainly inconsistent with Petke's definition. If the jury was using the "scientific lens" that Petke provided-i.e. , Petke's definition of grooming (which was erroneously admitted)-then it would have immediately recognized that defendant's answers did not apply that scientific lens but instead apparently relied on his own understanding of grooming. In other words, the jury would have understood Petke's testimony as scientific, but it would not have understood defendant's testimony as scientific. Indeed, the inconsistency between defendant's testimony and the "scientific" definition of grooming was driven home to the jury by defendant's own expert. After defendant testified, his counsel elicited a definition *563 of "grooming" from defendant's own expert witness, Dr. Johnson, that was consistent with Petke's definition and would have reinforced that defendant's answers were not scientific answers.[3]
Because the jury would not have understood defendant's testimony as scientific in nature, that testimony should not be ascribed to Petke and should not affect the determination whether the admission of Petke's testimony *593 was harmless. Nor did anything else occur at trial might have caused the jury to rely on Petke's definition of "grooming" in a manner that could have affected the verdict. The majority points to brief testimony by T that (1) T had seen defendant at the game shop on at least one prior occasion and defendant had asked on that occasion if he wanted to play a game of Magic, and (2) part of the reason that T wanted to go to defendant's house on the night of the charged incidents was because defendant was "very nice," had helped T "very numerous times" on his deck, and was "very nice" at "making decks and stuff." See 439 Or. App. at 583, 590, 439 P.3d at 557, 562. But both the prosecutor and defense counsel indicated to the jury that there had been no significant interactions between defendant and J before the night of the charged incidents, the prosecutor never suggested that any grooming occurred before the night of the charged incidents, and defendant has never mentioned the testimony cited by the majority in his harmlessness argument. T's brief mention of one prior interaction and defendant being "very nice" does not change the harmlessness analysis in my view. Similarly, the majority's description of the closing arguments overstates the record. In response to defense counsel's statements in closing argument about the lack of grooming evidence, the prosecutor made a brief reference to grooming in rebuttal that is meaningless as transcribed for purposes of appellate review.[4]
There is also a second and equally important reason that the trial court's error in admitting Petke's definition of "grooming" was harmless. Even if it were appropriate to impute defendant's testimony to Petke, the only conduct that was ever presented to the jury as being potentially "grooming" behavior was itself charged conduct (bribing T to remove his pants) or closely related inappropriate conduct (bribing T to take a Viagra ). When a defendant has admitted *594 to innocuous conduct with a child but denies sexual conduct, "grooming" evidence can make the admitted conduct look not so innocuous after all. But, here, the two acts that defendant testified could be construed as "grooming" were themselves sexually-charged acts, which defendant denied committing, and which went to the heart of the charges against him. If the jury found, as a matter of fact, that defendant did bribe T to take a Viagra and did bribe T to remove his pants to expose his penis, it is inconceivable that it could have any effect on the verdict whether the jury also thought that that conduct met the scientific definition of "grooming."
For both reasons, the admission of Petke's testimony was harmless. I would affirm the judgment and therefore, respectfully, dissent.

Similar to the hypothetical, the state alleged (and defendant denied) that defendant had offered to give Magic cards to T if he took a Viagra.

Similar to the hypothetical, the state alleged (and defendant denied) that defendant had offered to give Magic cards to T if he removed his pants to expose his penis.

Johnson defined "grooming" as "actions taken by an individual * * * to develop a relationship of trust typically with the child-and very often with the child's family-so as to then be able to take advantage of that trust." He further stated that grooming "typically involves isolating the child from their normal support structures," "typically involves a phase of maintenance in which the perpetrator attempts to maintain that relationship with the child [and] maintain access to them in a manner that they won't get caught," and generally occurs "over a period of time."

In the midst of the prosecutor's closing argument, the transcript states:
"The lesser included offenses. The judge is instructing you on those because that's the law and there are some facts in this case to support that the defendant took a substantial step towards touching T's penis. Remember all the testimony about grooming and that those are-those are actions for a certain (inaudible). T's statement, T's descriptions, can you make sense of the fact that he told some people, 'He was trying to touch my penis'? Sure."
(Emphasis added.)